Okay The next case for argument is Gutierrez-Rostran versus Lynch Miss Seif Good morning, Your Honors. My name is Abby Seif. I'm here on behalf of Luis Gutierrez-Rostran, and we're here to argue that we do have a pure issue of law for you to decide when reviewing the immigration judge's decision denying my client his right to present an asylum case based on not filing within the one-year bar. As we are well aware, 8 U.S.C. 1158 allows for an asylee to late-file his asylum claim if he provides evidence that there has been a change in circumstances in his home country that materially affects his asylum claim. The pure error of law that we are presenting to you today, Your Honor, which was actually conceded by the government, is that the immigration judge never reviewed the underlying asylum claim. Therefore, it is impossible for him to have made a determination as to whether the change in circumstances that were presented to him materially affected the underlying asylum claim. I believe the case law and the soiree and several others state that for a pure issue of law, counsel must state what the question of law is. If the question is answered in our favor, we win, and if the question is answered against us, we lose. The question is, does an immigration judge have to review the underlying asylum case when reviewing an issue of an exception to the one-year bar for change in country conditions? As I noted in my brief, and I believe that if the court comes out in our favor and reviews this case, you will find that he did not, he never looked at whether my client had a well-founded fear, and without looking at the first element of asylum, which is whether my client had a well-founded fear, he could not possibly have used the proper standard in 8 U.S.C. 1158 to find that changes in the country conditions materially affected the asylum claim. You can see from the judge's own decision that he's citing to a case on a motion to reopen. He's looking for law on this issue. He's looking for the definition of change in country conditions, and the only law that he can find is the Joseph decision, and that's what he cites in his case. But the Joseph decision has a different standard. It's the motion to reopen standard. In the motion to reopen, you do not look at the underlying asylum claim and whether it's materially affected by the change in country conditions, and that's the error of law that was made here. He never looked at whether my client had a well-founded fear, and without making a determination of whether he had a well-founded fear, how is he possibly going to determine whether the rise in violence by the Sandinistas in Nicaragua, the killing of his friend, the attack on Mr. Ruiz Sotelo, the man who testified on his behalf who had came just three months prior from Nicaragua, who sat in the same electoral position in the same city of the same age, was attacked by the Sandinistas? How is he going to weigh all of that information on changed circumstances if he has nothing to weigh it against? He has to first make a decision as to what is the asylum claim. I have a well-founded fear of being persecuted because I am an active member of the PLI and my family has active members that have opposed the Sandinistas. Well, what's changed since 2006? Well, between 2006 and 2012, there was calm. There was a pact between the parties, and then after the end of 2011, the beginning of the 2012 elections, there was an explosion of violence. If you weigh that, the explosion of violence, the personal attack against his cousin of the same name, and the fact that Mr. Ruiz Sotelo came in and spoke to the court who was given a positive credible fear interview, there is no way that a rational person couldn't look at that and find that he did in fact have a well-founded fear. But you don't have to get to the facts. You don't have to look at the facts on our initial question for a review. What was the DUI offense that led him to be ordered deported? The DUI is not a bar to asylum, so I didn't look into the DUI. You don't know what it was? No, I didn't pay any attention because it was not an issue for me. Secondly, Your Honors, if you do not agree with me on the pure legal issue, I did give you some supplemental authority and point out to the court that there is a divergence in this court's rulings, the Second Circuit's rulings, and several other around the country in regard to this issue as to whether you have jurisdiction to hear these one-year bar issues. You'll have courts that are coming out saying, and this was discussed in Yang, and that's my biggest concern here and something that I would like this panel to look at is the underlying cases in which Yang cited. Yang cited to, I can't pronounce the names, Yai Zhou Chen from the Second Circuit, and for the proposition that you can never hear issues of the one-year bar because they're always factual. That was the Yang's ruling, even though it did reverse the case on a totally other issue regarding the I-130. The wording was that this Seventh Circuit would never, ever have jurisdiction to hear one-year bar issues. Yet, six months later, the Duarte decision comes out and says exactly the opposite. It says as long as you produce constitutional issues of questions of law, then you may. And to argue, as the Yang court did, that these never happen is inconsistent with the supplemental authority that I gave to you and the numerous cases in which other circuits have reversed on this issue. And our case is just one of those. But going back to the underlying cases that Yang was relighting on, the Yai Zhou Chen case, that case never said we will never have authority to hear one-year bar issues. Rather, it said that the court should determine whether the petition for review in fact raises a constitutional claim or question of law. We examine the precise arguments of each petition. Moreover, Your Honor, I note that this court, and I'm going to probably botch the name of this case as well, but in the case cited in the Yang decision that Judge Easterbrook wrote, the Vikeshara decision, again, Judge Easterbrook in his decision wrote that as long as it's a constitutional argument or a question of law, this court has jurisdiction to hear it. And that is what we have produced to you today. Secondly, the immigration judge erred in looking at the standard of what an alien is required to produce when arguing a well-founded fear. The United States Supreme Court has stated that it can be less than 50%. It went into the analysis from the United Nations and said it can be less than 10%. A person can have a less than 10% likelihood that they will be persecuted if they return to their home country and still have a well-founded fear. The evidence that was presented to the immigration judge compels that decision. You have a person of exactly the same situation. You have State Department records, and you have corroborating affidavits that go with that. Also, with the well-founded fear, not only did it present the 10%, he also presented more than a 50% chance that he would be persecuted if he was returned if you look at the withholding of persecution. Okay, thank you, Ms. Stein. Ms. Freer? Good morning, Your Honors, and may it please the Court. Allison Freer for the Attorney General. In this case, Mr. Gutierrez filed his asylum application more than six and a half years after he entered the United States, well after the one-year deadline. The agency was not persuaded by his claim that changed circumstances in Nicaragua, excused the delay, and the Court lacks jurisdiction over that factual and discretionary determination. The petitioner argues that the agency was required to consider the entirety of his asylum claim before deciding whether or not the claim had been filed timely, but that's putting the cart before the horse. Before looking at the merits of the claim, the agency needed to determine whether or not the claim had been timely filed and whether or not he had established an exception to the filing deadline. But why doesn't the statutory standard for the exception require consideration of the strength of the underlying claim, at least the nature of the underlying claim, since it has to have affected, what's the phrase? It has to have materially affected. Materially affect the eligibility. This Court has held in Viracha that the question of whether any change in conditions would be material is a mixed question of fact and law, and this Court has also held it doesn't have jurisdiction over those mixed questions, unlike some other circuits. Well, but if the immigration judge hasn't considered the question because he just decided this is late, how does that comply with the statute? Well, here the immigration judge actually decided that there was no change. He didn't discuss the materiality of any change. He discussed simply whether or not there had been a change in violence. On appeal, the Board discussed materiality as well. So both determinations are properly before this Court. But the IJ's decision discusses only whether or not there had been a change, whether or not political violence had in fact increased, and whether or not Gutierrez faced increased risk in late 2012 and 2013, as opposed to when he left in 2006. And the question, of course, of whether conditions have changed is a purely factual question that requires the agency to weigh the evidence to decide how persuasive the testimony is, how persuasive the affidavits were, weigh them against the State Department evidence. And so that's a purely factual question, whether or not a change existed. Well, so what? So this Court lacks jurisdiction over factual questions in the context of asylum timeliness determinations. In the context of what? Asylum timeliness determinations, whether or not an asylum application has been filed timely, and whether or not the alien has established an exception to that. So is that an established rule? Yes, that's in the statute. That's in the Real ID Act. The 1158A3 stripped all courts of appeal of jurisdiction to hear any question regarding whether or not an asylum application had been filed timely or whether an alien was eligible for an exception to the filing deadline. And in the Real ID Act, restored jurisdiction, but only over questions of law and constitutional claims. Okay. Well, what about the other issue, the withholding of removal with the murder of his cousin and a friend? Why is that not a basis for withholding removal? Because the agency reasonably concluded that the record didn't compel the conclusion that there was a clear probability of harm upon return. That's a very high standard, much higher than the well-founded fear standard for asylum. Not that high a standard. Just a second. To be more likely than not, a 51% chance of... That's ridiculous. That business of more likely than not, especially when you put it in terms of percentages, is preposterous because there never are data that permit the estimate, an estimate of percentage of risk of being killed or tortured upon removal to another country. That's true. Though the Supreme Court said in Cardozo-Fonseca that the Supreme Court used the percentages. But whether or not Mr. Gutierrez is more likely than not to be harmed upon return is a much higher standard than the well-founded fear standard. And because his asylum application was untimely... But it's all mush, right? You say it's a higher standard. Yes. But how do you give any flesh to that? What is it you require? That's what the agency does. If two cousins are murdered, is that enough? Well, it depends on in what circumstances. If they are murdered in common crime, no. If they were murdered for their political... Yes, of course. But suppose two of them, two of them instead of one, are murdered for political reasons. Is that enough? I don't know. The agency wasn't faced with that question here, so I don't know. Pardon? The agency wasn't faced with that question here, so I'm unclear how that would come out. It may well be... The one cousin, the one cousin and the friend. Why isn't that enough? Was he a nice cousin or a bad cousin? I'm sorry? Was he a nice cousin or a bad cousin? I don't know and I'm not sure it's relevant. Why isn't one murder in your family enough? It might be if it were sufficiently tied to politics, which is what Mr. Gutierrez was basing his claim on. Was there any evidence of any other motive? I don't quite understand the immigration judge's treatment of that evidence as speculative. The only evidence that supported a link between politics and Mr. Gutierrez, the cousin's death,  and the agency simply wasn't persuaded by that. And the killer was the son of a guard to President Ortega? That's the claim, though there's no information how the affiance knew that, and Mr. Gutierrez did not testify to that, so it's unclear if he even knew about that. But Mr. Gutierrez and the witness, Mr. Sotelo, never testified to that effect, and Petitioner has never relied on those statements in attempting to establish eligibility. Mr. Gutierrez, other than his cousin, the rest of Mr. Gutierrez's family has been safe in Nicaragua while the Sandinistas have been in power. His brothers left Nicaragua in 2006 at the same time he did. They have both safely returned for visits since as a voluntary matter. And the evidence is that nothing happened to them. Is there any indication either of his brothers has been politically active in Nicaragua? Yes, they were both politically active before they left. No, after they left, in these return visits. There's no information either way in the record. Thank you. Mr. Gutierrez had an uncle who was mayor in the local town, and even after the Sandinistas came to power he was safe until he died of natural causes. The agency was not required to accept Mr. Gutierrez's conclusions about the reasons for his cousin's death or his friend's death. What about the... The law for Gutierrez has this very elaborate list of evidence for relief under the Convention Against Torture. You know this A, B, C, D, E, F, G... It's all evidence. There are articles, there are affidavits, there are notarized letters, there's testimony, and it's all about the basis for his fear of being killed and the death of the cousin and the friend, right? I mean, so this notarized letter from his parents says that... refers to the death of my nephew, Luis Gutierrez, and his friend, Lester Guzman, who were murdered on the 12th of January, 2013, by members of the Sandinista youth. Now, isn't that evidence? It's absolutely evidence, but it's not sufficient evidence to compel the... Well, why not? What do you want in the way of evidence? Something besides rumors. It's unclear how... What do you mean, rumors? Don't you think these people... I mean, they must know about the Sandinista... They must know a lot more than an immigration judge does about Sandinista violence. Yes, but that doesn't mean that they can necessarily always accurately describe whether it's happening or not in a specific case. There's no... Well, did the immigration judge discuss all these bits of evidence? He mentioned them in his decision, and he discussed at length Mr. Gutierrez's testimony, but I don't believe he mentioned the... Well, shouldn't he have at least explained why he didn't believe this evidence? That would have been helpful, but it wasn't required. Why isn't it required? Why don't you have to consider... I mean, this is a potential life-and-death situation. Why shouldn't the immigration judge be required to go over the evidence and... I mean, the immigration judge says, for example, there's no evidence to corroborate the respondents' belief that they were killed by the Sandinista youth for their political beliefs. Well, all those items, you know, the A through G, that's evidence, that's corroboration. Shouldn't the immigration judge explain why he doesn't think that any of those, or the sum total of them, establishes a substantial probability that Gutierrez will be targeted if he's sent back there? If this court finds that necessary, it should remand for the agency to do that, but the IJ is not required to write an exegesis on every argument, and in the beginning... Oh, come on, exegesis on... Look, this is a life-and-death situation, right? Yes. Potentially life-and-death. So why does he have to write a little exegesis on each piece of evidence? He did list the pieces of evidence. Well, you just said he didn't. I'm sorry. You said he doesn't have to. He just has to, you know, make some general comment. But in this case, at the beginning of his decision, he did go over the evidence and testimony that was available. In the analysis section, he didn't mention every piece of evidence in the record, but he discussed the parts that he thought were the most relevant. Okay, well, thank you very much. Thank you. Ms. Freer. Ms. Seif, do you have anything further? Thank you, Your Honours. Very quickly, I would disagree with the government's statement that 1158 does strip your ability to review factual findings in the case. And I understand that that's going to get me some pushback, but I would cite you to, in my supplemental cases, de Jonghong v. Gonzales, where the case was remanded by the Seventh Circuit, and it specifically said the court has jurisdiction to review issues on the one-year bar, where it is claimed that the fact-finding is so flawed that it becomes an error of law as such, and there's material misstatements of the record. So I don't think there's any... So I just want to be very clear about that, that nothing in 1158... That's the asylum statute, but in 1252, the Real ID Act, all it says is, we're giving you back the right to review these cases, and please do so. And they're giving it back to you because of the United States Supreme Court decision in Psy, which said there should be at least some habeas relief here, and there should be fairness, and there should be judicial review. So there's nothing in the Real ID Act that says that you absolutely cannot look at factual issues. What it says is you only have jurisdiction to look at constitutional questions and questions of law. So as in those Second Circuit cases, where, for example, the judge said that the alien testified that he was never beaten, when in fact there was evidence that he was beaten, or, Judge Posner, I believe one of your great decisions on the Macedonia case with the lions, where they're so distorting the facts, then it becomes an error of law, and you do have authority to hear those. And so I don't like the concept that we're looking at the Real ID and saying we can't hear facts, we can't hear facts. I will say in this case you can take that position and still rule in my favor because ours is a clear issue of law. But I think when you look at the Real ID... Okay. Thank you, Ms. Sattler. So you were appointed, were you not? No, Your Honor, I was a student. And we thank you for your care as well. Okay, our next case for argument, United States v. Plata, Ms. Christensen. Ms. Christensen.